# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**TERRANCE SYKES, Jr.,**

      **Plaintiff,**

v.                                              **Civil Action No. 3:13cv84**
                                                      **(Judge Groh)**

**FEDERAL BUREAU OF PRISONS,**
**TERRY O'BRIEN, Warden,**
**JOHN DOE, Head of Facilities,**
**CHRISTOPHER GOISSE, RN,**
**H. BOYLES, HSA,**
**WALTER DOBUSHAK, Staff Physician,**
**JOHN DOES, Transporting Staff,**
**ALL EMPLOYEES AT USP HAZELTON.**
**JOHN DOE, Head of Transportation,**
**C. EICHENLAUB, Regional Director,**
**HARRELL WATTS, General Counsel Administrator,**
**JOHN DOE, Assistant Warden Over Medical Department**

      **Defendants.**

## AMENDED REPORT AND RECOMMENDATION[1]

On July 18, 2013, the *pro se* plaintiff initiated this case by filing a civil rights complaint against the above-named defendants. On that same date, the plaintiff was sent a Notice of Deficient Pleading. On August 19, 2013, the plaintiff filed his complaint on this court's approved form. On August 29, 2013, an Order was entered granting the plaintiff leave to proceed without prepayment of fees. On September 16, 2013, the plaintiff paid the required initial partial filing fee. On September 25, 2013, the plaintiff filed a Motion to Amend his Complaint. The Motion was granted on April 11, 2014. This case is before the undersigned for an initial review and report and recommendation

---

[1]The Original Report and Recommendation was entered on October 7, 2013. However, it inadvertently failed to address a Motion to Amend that was filed by the plaintiff on September 25, 2013. That motion has now been granted, but the undersigned recommendation that this case be dismissed is not altered.

pursuant to LR PL P 2 and 28 U.S.C. §§ 1915A and 1915(e).

## I. Factual and Procedural History

### A. The Complaint

In the complaint, the plaintiff asserts that on August 31, 2010, while incarcerated at U.S.P. Hazelton in Bruceton Mills, West Virginia, he injured his right knee. The plaintiff maintains that the injury occurred during a move through the "yellow corridor" to the recreation yard when he tried to avoid a sudden violent altercation that erupted between two separate groups of inmates. The plaintiff indicates that he fell on the un-level, rocky terrain and sustained a ruptured right patellar tendon and tendinitis to his left knee. He alleges he suffered more damage and excruciating pain when Christopher Goisse, RN., a federal employee, attempted to transport him to health services by using a "dolly-like chair." However, Goisse did not apply safety straps to keep him secure and when Goisse ran over a rock, the chair tipped and he was thrown to the concrete, landing on his knees which caused further injury. The plaintiff also alleges that despite his knee injuries, he was forced to bend his legs to accommodate chair transfer to health services. From there, the plaintiff alleges he was transferred to a local hospital by van, still in the "dolly chair," with no safety straps or seat belt. He alleges that he was instructed to "hang on to the seat belt" to secure the chair during transport. However, the chair slid throughout the trip which required him to apply pressure to his knee to keep from falling, causing further knee pain.

The plaintiff underwent orthopedic surgical repair to his right patellar tendon on September 2, 2010. He alleges that aside from one session with an orthopedic specialist on November 24, 2010, he was denied any physical therapy for his knee. The plaintiff maintains that due to the defendants' refusal to provide him with physical therapy to rehabilitate his knee, he has suffered a great deal of

mental and emotional distress.

The plaintiff further alleges that due to the obvious injury to his right knee, he did not receive proper treatment for his left knee. More specifically, the plaintiff alleges that his left knee was not x-rayed until December 21, 2010. As a consequence, the plaintiff alleges that he has to walk with a brace and needs surgery to completely remove the tendon and replace it with another taken from somewhere else in his body.

In addition to his claims regarding his improper transport after his fall, lack of physical therapy, and failure to properly diagnose the condition of his left knee, the plaintiff also alleges the defendants fraudulently failed to record how his injuries occurred. The plaintiff maintains that the defendants all conspired to cover up how his injuries occurred by fabricating a story and then all signing off on the story.

In amending his complaint, the plaintiff references medical records from USP Lee, located in Jonesville, Virginia, which are dated July 23, 2013. Those records indicate that the plaintiff was prescribed a knee brace to keep the patellar tendon stable due to the tear in his tendon. The records further indicate that he was prescribed Naproxen 500 mg to be taken twice daily with food to help with the inflamation and ease the pain. In addition, records from USP Lee establish that the plaintiff has been given a walking pass from medical staff to carry while walking the prison grounds wearing the brace. Based on these new developments, the plaintiff has amended his complaint to add a claim that he now suffers further mental and emotional distress due to harassment he has had to endure from correctional officers at USP Lee when wearing the knee brace. More specifically, the plaintiff alleges that the knee brace causes the metal detectors on the prison grounds to ring, thereby subjecting him to body searches and harassment by officers who interpret his "medical records and

3

medical needs how they see fit, and to provoke [him] into a confrontation, causing [him] unnecessary aggravation, inconvenience, annoyance and embarrassment, and causing [him to miss meals that the Bureau of Prisons must provide to me." He further maintains that he has been strip searched due to having to wear the knee brace. He also maintains that he has stopped wearing the brace against the doctor's orders, out of fear of harassment and bing threatened with being placed in the Special Housing Unit.[2]

For relief, the plaintiff seeks compensatory damages and punitive damages. In addition, he requests an injunction ordering the BOP to provide him with physical therapy to properly and throughly rehabilitate his right knee.

## II. Standard of Review

Because the plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous or malicious. Pursuant to 28 U.S.C. § 1915A(b), a court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). However, the court must read *pro se* allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520 (1972). A complaint which fails to state a claim under Fed.R.Civ.P. 12(b)(6) is not automatically frivolous. See Neitzke at 328. Frivolity dismissals should

---

[2]To the extent that the plaintiff may be attempting to raise claims against personnel at USP Lee, the same are not properly raised in this case. The United States District Court for the Northern District of West Virginia does not have personal jurisdiction over staff at USP Lee, and the plaintiff must pursue any claims against those individuals in the appropriate court in Virginia.

only be ordered when the legal theories are "indisputably meritless,"[3] or when the claims rely on factual allegations which are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 32 (1992). This includes claims in which the plaintiff has little or no chance of success. See Estelle v. Gamble, 429 U.S. 97, 106 (1976).

### III. Analysis

#### A. Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaustion of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[4] and is required even when the relief sought is not available. Booth at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter, at 524 (citing Booth, 532 U.S. at 741) (emphasis added).

Moreover, in Woodford v. Ngo, 548 U.S. 81, 84-85 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal

---

[3] *Id.* at 327.

[4] *Id.*

case"; and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, "the PLRA exhaustion requirement requires *full* and *proper* exhaustion." Woodford at 92-94 (emphasis added). Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. *Id.* at 101-102.

The Bureau of Prisons provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). See 28 C.F.R. § 542.10, et seq. If the prisoner achieves no satisfaction informally, he must file a written complaint to the warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the warden's response, he may appeal to the regional director of the BOP (BP-10) within 20 days of the warden's response. Finally, if the prisoner has received no satisfaction, he may appeal to the Office of General Counsel (BP-11) within 30 days of the date the Regional Director signed the response. An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. 28 C.F.R.§ 542.10-542.15; Gibbs v. Bureau of Prison Office, FCI, 986 F.Supp. 941, 943 (D.Md. 1997).

In Jones v. Bock, 549 U.S. 199 (2007), the United States Supreme Court ruled, among other things, that an inmate's failure to exhaust under the PLRA is an affirmative defense, and an inmate is not required to specifically plead or demonstrate exhaustion in his complaint. Nonetheless, pursuant to the Court's authority under 28 U.S.C. § 1915, it not foreclosed from dismissing a case *sua sponte* on exhaustion grounds, if the failure to exhaust is apparent from the face of the complaint. See Anderson v. XYZ Prison Health Services, 407 F.3d 674, 681-82 (4th Cir. 2005).

In this case, the plaintiff initiated three separate grievances. The first, assigned Remedy ID #611770 was filed at the institutional level on October 19, 2010, seeking monetary damages for his knee injury. The plaintiff's second grievance, assigned Remedy ID #618201 was filed at the institutional

level on December 2, 2010, and sought physical therapy for his knee. The plaintiff's third grievance, assigned Remedy ID # 620935 was filed at the institutional level on December 10, 2010, and requested that his medical records be corrected. However, the plaintiff only exhausted Remedy ID # 61770 by appealing the warden's denial to the Regional Office, and its denial to the Office of General Counsel. (Doc. 11-8, p. 4). In point of fact, the plaintiff's complaint clearly indicates that he did not pursue the grievance regarding physical therapy or correction of his medical records beyond the institutional level. (Doc. 11, p. 5). Accordingly, all of the plaintiff's claims, other than those regarding his fall and damage to his right knee are unexhausted and subject to dismissal. See Woodford, 548 U.S. at 85 ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). Moreover, for the reasons discussed below, both the plaintiff's exhausted and unexhausted claims are due to be dismissed with prejudice.

**B.    Statute of Limitations**

For purposes of determining the appropriate statute of limitations, claims filed pursuant to 42 U.S.C. § 1983 are analogous to "general personal injury actions." Wilson v. Garcia, 471 U.S. 261, 279 (1985). Thus, their timeliness is determined based upon the relevant state limitations period for personal injury actions. Because Bivens is the federal equivalent to an action under § 1983, federal courts have consistently extended the state general personal injury statute of limitations to Bivens cases, as well as § 1983 claims. See, e.g. Chin v. Bowen, 833 F.2d 21, 23-24 (2d Cir. 1987). In fact, the Fourth Circuit Court of Appeals has determined that West Virginia's two year personal injury statute of limitations contained at W.Va. Code § 55-2-12(b) is appropriately applied in Bivens actions. See Reinhold v. Evers, 187 F.3d 348, 359, n. 10 (4th Cir. 1999).

W.Va. Code § 55-2-12(b) provides:

> Every personal action for which no limitation is otherwise prescribed shall be brought: (a) within two years next after the right to bring the same shall have accrued if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party dies, it could not have been brought at common law by or against his personal representative.

In this case, the plaintiff's claims against the defendants are clearly outside the two-year applicable statute of limitations. The complaint clearly states that the plaintiff was injured on August 31, 2010. Given the extensive injuries that the plaintiff alleges that he incurred, it is clear that he was aware of his claim on that date. Moreover, with respect to the denial of physical therapy, the plaintiff filed an institutional grievance seeking therapy on December 2, 2010. Finally, with respect to alleged discrepancies in his medical records, the plaintiff was clearly aware of them when he filed an institutional grievance on December 10, 2010, seeking corrections.

The undersigned is cognizant that while a Bivens plaintiff pursues his administrative remedies, as he is obligated to do by the PLRA, the otherwise applicable statute of limitations is tolled. Young v. Thompson, No. 2:10cv66, 2011 WL 3297494 (N.D.W. Va. July 29, 2011)(citing Johnson v. Lappin, 2011 WL: 560459 (S.D.W. Va. Jan. 6, 2011)); see Lopez v. S.C.D.C., No. 3:06251-PMD-JRM, 2007 WL 2021875 *2 (D.S.C. 2007) ("The Fourth Circuit has not addressed the issue of whether the statute of limitations for a § 1983 action should be equitably tolled while a prisoner is exhausting the administrative process. However the 'uniform holdings of the circuits that have considered the question' typically tolls the statute of limitations.") citing Brown v. Valoff, 422 F.3d 926, 943 (9th Cir. 2005)).

Here, the one remedy which was exhausted was exhausted on April 26, 2011, when Harrell

Watts denied his appeal of the decision by the regional office. (Doc. 11-8, p. 4). Therefore, the plaintiff would have had until April 26, 2013, to timely file a complaint regarding the August 31, 2010 fall and injury. However, he did not sign his original complaint until July 12, 2013, more than two years after exhaustion was completed. Accordingly, the plaintiff's claims against the defendants[5] are time-barred.

The undersigned recognizes that the statute of limitations is an affirmative defense, which means that the defendant generally bears the burden of affirmatively pleading its existence. See Fed.R.Civ.P 8(c); Dean v. Pilgrim's Pride Corp., 395 F.3d 471, 474 (4th Cir. 2005)("the rasing of the statute of limitations ...constitutes an affirmative defense.") Moreover, where a defendant has failed to raise a statute of limitations defense by way of its answer, the defense is usually waived. See Peterson v. Air Line Pilots Ass'n Int'l, 759 F.2d 1161, 1664 (4th Cir. 1985). Because the statute of limitations is a waivable defense, its restrictions are not jurisdictional in nature, and in an ordinary civil case, "the district court should [refrain] from raising and considering the statute of limitations defense *sua sponte*." Eriline Company S.A. v. James P. Johnson, 440 F.3d 648, 657 (4th Cir. 2006).

However, the Fourth Circuit has also recognized that the statute of limitations may be addressed *sua sponte* when such a defense appears on the face of either a petition for habeas corpus filed pursuant to 28 U.S.C. § 2254, see Hill v. Braxton, 277 F.3d 701, 706 (4th Cir. 2002), or a complaint filed *in forma pauperis* pursuant to 28 U.S.C. § 1915, see Nasim v. Warden, Md. House

---

[5]Because the undersigned has determined that the plaintiff's complaint is time barred, a specific analysis of the plaintiff's claim against each defendant has not been undertaken. However, it is clear that the Federal Bureau of Prisons is not a person and is not subject to suit. Moreover, it would appear that Warden O'Brien, Regional Director Eichenlaub and General Counsel Administrator Harrell Watts have been sued in their official capacity and would be entitled to be dismissed from this action.

of Corrections, 64 F.3d 951, 953-54 (4th Cir. 1995). In Nasim, the Court concluded that, in evaluating a complaint filed *in forma pauperis* pursuant to § 1915, a district court may consider a statute of limitations defense *sua sponte* when the face of the complaint plainly reveals the existence of such defense. See 64 F.3d at 943-54. In reaching this conclusion, the Court observed that, in eliminating the requirement for paying costs, § 1915 removed "any economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits," and therefore presented the potential to overburden the judicial system with patently meritless lawsuits. Id. Moreover, § 1915 requires a district court to screen initial filings and directs a district court to dismiss a complaint filed *in forma pauperis* "at any time if the court determined that...the action or appeal...is frivolous or malicious...[or] fails to state a claim on which relief may be granted." § 1915(3)92)(B)(I)-(ii). Accordingly, the Court explained that this screening authority distinguishes *in forma pauperis* suits and establishes a justification for an exception to the general rule that a statute of limitations defense should not be raised and considered *sua sponte*. Id. at 953-54. See also Castillo v. Grogan, 52 Fed. Appx. 750, 751 (6th Cir. 2002)(district court may *sua sponte* dismiss complaint as time-barred when the defect is obvious); Alston v. Tennessee dept. of Corrections, 2002 WL 123688 * 1 (6th Cir. Jan. 28, 2002)("Because the statute of limitations was obvious from the face of the complaint, *sua sponte* dismissal of the complaint was appropriate.); Fraley v. Ohio Gallia County, 1988 WL 789385 * 1 (6th Cir., Oct.30, 1998)(affirming *sua sponte* dismissal of *pro se* § 1983 action filed after two year statute of limitations for bringing such an action had expired); Hunterson v. Disbabato, 2007 WL 1771315 * 1 (3d Cir. June 20, 2007) (a district court may *sua sponte* dismiss a claim as time-barred where it is apparent from the complaint that the applicable limitations period has run); Pino v. Ryan 49 F.3d 51, 53-54 (2d Cir. 1995)(concluding that district court can raise statute of limitations defense *sua sponte*

in evaluating complaint filed pursuant to § 1915).

Accordingly, even if the plaintiff might have a cause of action under the Eighth Amendment, it is apparent on the face of the complaint that the statute of limitations for bringing this Bivens claim expired before he filed this action. Therefore, the complaint should be dismissed on initial screening.

### IV. Recommendation

For the foregoing reasons, the undersigned hereby recommends that the complaint be **DISMISSED with prejudice**.

Within fourteen (14) days after being served with a copy of this recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable Gina M. Groh, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208.

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket.

DATED: April 14, 2014  _____

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE